### IN THE UNITED STATES DISTRICT COURT
### FOR THE
### MIDDLE DISTRICT OF PENNSYLVANIA

WAI CHIU MAH                      :
(Petitioner)                     :
                                 :    **1: CV   00-013**
                                 :
      —v—                        :       FILED
                                 :      SCRANTON
                                 :
JANET RENO, ATTTORNEY GENERAL,   :     JAN 2 1 2000
(Respondent)                     :
                                   PER _____/_____  RECEIVED
                                        DEPUTY CLERK  SCRANTON

                                           JAN 1 1 2000
        PETITION FOR RELIEF PURSUANT
        TO 28 U.S.C. SECTION 2241        PER
                                             DEPUTY CLERK

NOW COME, Petitioner, Wai Chiu Mah, pro se, and respectfully moves
this honorable court to grant him relief sought under Title 28 U.S.C.
section 2241 as to his claim of violation of his constitutional due
process of Fifth Amendment based on his continued indefinite detention.

Petitioner further moves this honorable court to apply the standard in
**Haines v. Kerner, 404 U.S. 519 (1971).**   In **Haines,** the Supreme Court
urged both the State and Federal courts to construe pro se and indigent
petition liberally and cure all procedural errors because pro se
petitioners are not lawyers.

In support thereof, Petitioner avers as follows:-

#### FACTUAL STATEMENT

Petitioner, Wai Chiu Mah, is a native and citizen of Hong Kong, born
November 12th. 1954, who came into United States on March 6th. 1965 at

Honolulu, Hawaii with his mother, father, and five (5) of his siblings.
In 1965, his status was adjusted to that of a lawful permanent resident.

Petitioner further stated that since his arrival into United States in 19
1965, he never left United States, and his entire family ( including
his wife, whom he married on July 25th. 1980, his two United States
citizen children, his mother and father, who are retired naturalized &
United States Citizens, and his five siblings, who are United States
citizens ) resides in the United States from 1965 till present.

On or about February 25th.1998, while serving his prison sentence for a
criminal conviction, he was ordered remove from United States, and
Petitioner through his counsel appealed the decision of the Immigration
judge of his removal order to the Board of Immigration Appeals.

On or about January 15th. 1999, the Board of Immigration Appeals (BIA)
dismissed Petitioner's appeal on the groung that he was convicted of an
aggravated felony, and his removal order became administratively final.

Since the removal order became administratively final (January 15, 1999),
over 12 months, the INS could not deport or remove Petitioner back to
his native country Hong Kong, he did not interfer with his removal prdees
rather, he truthfully  supplied all necessary informations and documents
to assist his deportation officer to fasten his removal to Hong Kong.

It is well established under section 241 (a)(1) of the INA, that the
Attorney General must remove an alien from United States within the remov
removal period. The removal period is defined as the ninety (90) days

2

period following the date the removal becomes adminstratively final.


If the alien is not removed within the removal period, he or she must be released on supervision, under conditions set forth by the Attorney General in section 241 (a)(3) of the INA. Petitioner is entitled to be release.


## ISSUE PRESENTED FOR REVIEW

Whether continued detention of a lawful permanent resident, with well established family ties, after final administrative removal order violates both substantive and procedural due process of Fifth Amendment.


## SUBJECT MATTER AND DISTRICT COURT JURISDICTION

The District Court for the Middle District of Pennsylvania has jurisdiction over this petition by virtue of **Title 28 U.S.C. section 2241** of the Federal Rules of Criminal Procedure which allows person(s) being held unlawfully to petition the court in the jurisdiction or District of his confinement.


Petitioner is being held in the custody of Immigration and Naturalization Service at the Snyder County Prison, Pennsylvania. Petitioner is not addressing any issue relating to a deportation or removal order but rather he is challenging the constitutionality of his continued detention without being afforded an opportunity for review or interview to determine his release.

The Fifth Amendment mandates that " no person shall be deprived of life, liberty or property without due process of law". This due process protection extends not only to United States citizens but to any person within the territiorial United States. See **Plyler v Doe,** 487 **U.S. 202, 102 S.Ct 2382, 72 L.Ed 2d 786 (1982).**

In 1996, Congress through the Antiterrorism and Effective Death Penalty Act (AEDPA) and the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) attempted to narrow down and reduce judicial challenges to immigration rulings, but several courts have held that the power of the "Great Writ" to challenge issues of constitutional violations as it relates to aliens, both legal and illegal is still intact. See **Sandoval V Reno,** 166 F.3d 225 (3rd Cir. 1999), **DeSousa v. Reno,** —F.3d—1999, WI 643171 (3rd. Cir. Aug 25, 199).
In **Sandoval,** the Third Circuit Court of Appeals held that AEDPA and IIRIRA did not eliminate habeas corpus jurisdiction over all deportation related claims under 28 USC Section 2241 because there was not a clear statement of Congressional intent to repeal habeas corpus jurisdiction and it could not be repelled by implication. See **Sandoval, 166 F. 3d at 231-38.**

## ARGUMENT IN SUPPORT

Petitioner's constitutional right to due process was violated when he was detained by the INS, 12 months after a final removal order without review or interview in accordings with the interim procedures of August 1999 by Mr. Pearson (Assistant Commission for INS).

The Fifth Amendment mandates that " no person shall be deprive of life, liberty, or property without due process of law; This due process of law protection extends not only to United States Citizen but also to any person within the territoral Unites States, like Petitioner. In the case at bar, Petitioner was found removed on January 15th. 1999 to his country, Hong Kong. He has faithfully provided to the INS (Deportation officer) all information necessary to further his removal process. However, after 12 months of being in the custody of INS, i.e. prison, Petitioner is not being incarcerated pending

4

deportation, he is just being incarcerated for the simple fact that the INS could not deport him to Hong Kong. This does not justify indefinite detention, considering that deportation is not a criminal proceedings, and it's purpose is not punitive. See **INS v Lopez-Mandoza, 468 U.S. 1032 (1984), Carlson v. Landon,** 342 U.S. 524 (1952). Detention pending deportation was not intended by Congress as punishment, rather, the detention serves as a regulatory purpose - preventing aliens from disappearing pending the resolution of deportation proceedings. Therefore, when there is no longer deportation proceedings, the detention loses it's regulatory purpose as intended by Congress and then continued detention will be pumitive and also will violate both substantive and procedural due process. In **United States v. Zadvedas, 986 F. Supp. 1011 (E.D.La. 1997),** the District Court found that the indefinite detention of a deportable alien violate both substantive and procedurall process.

In **Wong-Wing v. United States, 163 U.S. 228 (1896),** the Supreme Court held that imprisonment of deportable Chinese aliens consitute " punishmen and hence could not be imposed unless the alien is given the full due process protection given to those charged with criminal acts. Although the statute at issue in **Wong-Wing** - purported to be an " immigration " statute, the Court held that Congress authority over immigration, including the power to deport aliens (and to detain aliens as an incident of deportation), did not give Congress the power to force deportable aliens to serve prison time before being deported without a " judicial trial to establish the guilt of the accused." id at 227. Therefore, Petitioner's contained detention cannot be justifies as criminal punishment.

In **Rodeiquez-Fernandez v Wilkinson, 684 F.2d. at 1385,** the Court of Appeals for the Tenth Circuit observed that the prolongued dentention of and alien in deportation proceedings was "punishment" under conditions as severe as apply to our worst criminals.

In support of aliens prolongued detention constitutes punishment, Justice Jackson remarked " it over works legal fiction to say that one is free in law when by the commonest of common sense he is bound". **Mezei, 345 U.S. at 225, (Jackson J. disenting),** it is similary unrealisti

5

to belive that these INS detainees are not actually being <u>punished</u>
in some sense for their past conduct. Petitioner have served his
prison dentence and is still detained awaiting deportation for over
12 months. INS knowing that deportation to Hong Kong is impossible
at present.   Courts have repeatedly held that INS detention is only
permisible it it is actually related to deportation, that is, if
INS can demonstrate that an alien in INS setention can actually be
deported within a reasonable period of time. See <u>**Kusman v. District**</u>
<u>**Director of INS at Port of New York,**</u> **177 F.Sup 541 (S.D.N.Y. 1953),**
where alien under deportation order establishes that the INS is unable
to deport him, it cannot now be said that he is being detained for
the purpose of deportation. In <u>**Petition of Brooks,**</u> **5 F.2d 238 (D.Mass.**
**1925)** where INS admits its utter inability to deport alien to Russia
due to the absence of diplomatic relations between Russia and United
States. If detention does not serve the purpose of effecting deportation
and Petitioner must be released because "[t]here is no power in this
court or in any tribunal in this country to hole indefinitely any
same citizens or aliens in imprisonment except as a punishment for
crime". As Judge Damrell wrote:

> **Once it becomes evident that deportation is**
> **not realizable in the future, the continued**
> **detention of the alien loses the raison d'etre.**
> **If there is nowhere to send the alien, then**
> **indefinite detention is not longer a temporary**
> **measure in the process of deportation; it is**
> **permanent confinement. The Petitioner's**
> **confinement of nearly four years with no end**
> **in sight, and the probability of permanent**
> **detention is an excessive means of accomplishing**
> **the purposed sought. This result shocks the**
> **consciense"...Accordingly the court finds that**
> **Petitioner's detention is violative of his**
> **constitutional rights to substntive due process."**

<u>**Trans v. INs,**</u> **14 F.Supp 2d. 1184 (E.D.Cal.1988),** ( quoting <u>Zadvdes</u>
<u>**v. Caplinger,**</u> **986 F. Supp. 1011),** See also <u>**Hernanowsky v. Farquharson,**</u>
**39 F. Supp, 2d. 1418 ( D.R.I. 1999).**

Congress being aware of the punishment and violation of due process
in prolonged detention or indefinite detention, authorized Attorney
General through Immigration legislation to release any alien under

an order of supervision with a final order of removal, whose removal
cannot be accomplished within the 90 day removal period provided
the alien not interfer with the removal process. See **INA, Section
241.4.**

Apart from Congressional ligislation in **8 C.F.R. section 241.4,** the
Immigration and Naturalization Service sestablished its own policy
guideline after the expiration of the removal period in compliance
with the Congressional Legislation. See:

> **Attached "A"** ( February 3, 1999, Pearson Memo)
>
> **Attached "B"** ( April 30, 1999, Pearson Memo)
>
> **Attached "C"** ( June 12, 1999, Blackman Memo)

These Memos further provide that every six months, the District Director
must review the status of any alien detained beyond the removal period
to determine whether " there has been a change in circumstances that
would support a releases decision since the 90 day review". The alien
is given the opportunity to demonstrate that he is not a threat to
the community and likely to comply with the removal order.

The interim procedures, pursuant to the provision of **8 C.F.R. § 241.4
no. 6,** clearly states that " the fact that an alien has a criminal
history does not create a presumption in favor of continued dentention.
This reasoning is supported by the Third Circuit Court of Appeals
decision in **NGO v.INS,..F.3d..(cites as 1999 WL 744015, 3rd Cir.PA.),**
the court held that " Due process is not satisfied, however, by
rubberstamp denials based on temporally distant offenses. The process
due even to deportable and excludable aliens requires the opportunity
for an evaluation of the individual's current threat to the community
and his flight risk". The court further states that "Measure must
be taken to assess the risk of flight and danger to the community
on a current basis. The stakes are high and we emphasize that grudging
and perfunctory review is not enough to satisy the due process right
to liberty, even for aliens". In the case at bar, Petitioner has
been under the custody of INS after his final order of removal for
12 months without any review or interview according to the interim
rules or any of the memos by either Micheal Pearson or District Director
Scott Blackman.

Detaining Petitioner for 12 months without any interviews or reviews is a violation of substantive and procedural due process and as well an Eight Amendment cruel and unusual punishment.

For the reasons stated above, Petitioner respectfully requests this Honorable Court to grant his habeas corpus and order his release from INS detention, considering the Third Circuit Court of Appeals decision in **NGO v INS,** **1999 WI 744015,** and Federal District Court at Scranton, PA. decision in **Euclides-Cruze v.Reno,** **Civil No.4; CV; 99-1512 (Oct. 27th, 1999 M.D.PA)** and **Barbaro Pallet V. Reno,** **Civil No. 4; CV; 99-1316 (Oct. 18th., 1999 M.D.PA.).**

Respectfully Submitted

WAI CHIU MAH # 9800193
Snyder County Prison
600 Old Colony Road
Selinsgrove, PA 17870-8610





U.S. Department of Justice
Immigration and Naturalization Service

### HQCOU 90/16.51

Office of the Executive Associate Commissioner          *425 I Street NW*
*Washington, DC 20536*

FEB 3   1999

MEMORANDUM FOR REGIONAL DIRECTORS

FROM:      Michael A. Pearson
           Executive Associate Commissioner
           Office of Field Operations

SUBJECT:   Detention Procedures for Aliens Whose Immediate Repatriation
           Is Not Possible or Practicable

    This memorandum clarifies the authority of District Directors to make release decisions and emphasizes the need to provide a review of administratively final order detention cases both before and after the expiration of the mandatory 90 day detention period at § 241(a)(2) of the Immigration and Nationality Act (INA).

    The District Director is required to review every administratively final order removal case before the ninety [90] day removal period mandated by § 241(a)(1) expires. 8 C.F.R. § 241.4 gives the District Director the authority to make release decisions beyond the removal period based on specific criteria in the regulation as set forth below. The regulation also provides that the District Director should provide an alien with the opportunity to demonstrate by clear and convincing evidence that he is not a threat to the community and is likely to comply with the removal order. The alien may be given this opportunity in writing, orally, or a combination thereof. The District Director must ensure that the file is documented with respect to the alien's opportunity to present factors in support of his release, and the reasons for the custody or release decision.

    The District Director cannot delegate the authority to render the ultimate custody or release decision beyond those directly responsible for detention within his district or Service Processing Center (SPC). Such individuals may include the Deputy District Director, the Assistant Director for Detention, the Officer in Charge (OIC) of a detention center, or persons acting in such capacities. These persons must be specifically designated by the District Director.

SEP-09-1999  16:44    USDOJ INS LITIGATION UNIT

From: Michael A. Pearson                                                    Page 2
Subject: Detention Procedures for Aliens


Although the District Director cannot relinquish his decision-making authority, he may utilize various methods to assist in reaching a determination. For example, he may designate an individual or group of individuals to review the alien file and obtain any other relevant information. To the extent Districts have a high volume of post order cases, the District Director may also request detail assistance from other districts, the region and/or headquarters for the purpose of conducting custody reviews. The District Director may use information obtained by local staff or detailees to make his custody decision. Detail assistance may be coordinated through John Castro, at Headquarters Detention and Deportation, (202) 616-7836.

Every six months, the District Director must review the status of aliens detained beyond the removal period to determine whether there has been a change in circumstances that would support a release decision since the 90 day review. Further, the District Director should continue to make every effort to effect the alien's removal both before and after the expiration of the removal period. The file should document these efforts as well.

When an alien is released pursuant to 8 C.F.R. § 241.4 under an order of supervision, the order of supervision must specify the applicable conditions of supervision. In addition, the order of supervision must be signed by one of the parties authorized in 8 C.F.R. § 241.5.

Any alien described in 8 C.F.R. § 241.4(a), may be returned to custody subsequent to release under an order of supervision if such alien violates any of the conditions of the order of supervision. Any alien described in 8 C.F.R. § 241.4(b) who violates the conditions of the order of supervision is subject to the penalties described in § 243(b) of the INA.

District Directors are advised that a detention review is subject to the provisions of 8 C.F.R. § 236.1(d)(2)(ii) if the alien submits a written request to have his detention status reviewed by the District Director. Under 8 C.F.R. § 236.1(d)(2)(iii), the alien may appeal the District Director's decision to the Board of Immigration Appeals. Where the alien has not made a written request to have his custody status reviewed, however, there is no provision for appeal of the District Director's decision to the Board of Immigration Appeals. See 8 C.F.R. § 241.4.


8 C.F.R. § 241.4  Continued detention beyond the removal period.

(a) Continuation of custody for inadmissible or criminal aliens. The district director may continue in custody any alien inadmissible under § 212(a) of the Act or removable under § 237(a)(1)(C), 237(a)(1)(C), 237(a)(2), or 237(a)(4) of the Act, or who presents a significant risk of noncompliance with the order of removal, beyond the removal period, as necessary, until removal from the United States. If such an alien demonstrates by clear and convincing evidence that the release would not pose a danger to the community or a significant flight risk, the district director may, in the exercise of discretion, order the alien released from custody on such conditions as the district director may prescribe, including bond in an amount sufficient to ensure the

From: Michael A. Pearson                                                                    Page 3
Subject: Detention Procedures for Aliens

alien's appearance for removal. The district may consider, but is not limited to considering, the following factors:

> (1)    The nature and seriousness of the alien's criminal convictions;
> (2)    Other criminal history;
> (3)    Sentence(s) imposed and time actually served;
> (4)    History of failures to appear for court (defaults);
> (5)    Probation history;
> (6)    Disciplinary problems while incarcerated;
> (7)    Evidence of rehabilitative effort or recidivism;
> (8)    Equities in the United States; and
> (9)    Prior immigration violations and history.

(b) Continuation of custody for other aliens. Any alien removable under any section of the Act other than § 212(a), 237(a)(1)(C), 237(a)(2), or 237(a)(4) may be detained beyond the removal period, in the discretion of the district director, unless the alien demonstrates to the satisfaction of the district director that he or she is likely to comply with the removal order and is not a risk to the community.

Note: these instructions also apply to criminal alien deportation cases under former INA § 242 where the aliens are subject to required detention under current INA § 236(c).
See October 7, 1998 memorandum entitled INS Detention Use Policy.

ATTACHMENT  C




**U.S. Department of Justice**
Immigration and Naturalization Service

ERDDP 50/1
ERDDP 50/4.6

*70 Kimball Avenue*
*So. Burlington, VT 05403*

**JUN 2 2 1999**

MEMORANDUM FOR: DISTRICT DIRECTORS
                OFFICERS-IN-CHARGE
                EASTERN

FROM:       J. Scott Blackman
            Acting Regional Director
            Eastern

SUBJECT:    Detention Procedures for Aliens Whose Immediate Repatriation
            Is Not Possible or Practicable

## BACKGROUND:

On April 26, 1999, we asked for a description of each district's specific efforts in reviewing detained final order cases pursuant to Headquarters Field Operations guidance of February 3, 1999. We have reviewed field responses and believe that most districts are in compliance with this guidance, incorporating core elements in their review process. The purpose of this memorandum is to provide a degree of uniformity to the reviews being conducted within the Eastern Region. This guidance will remain in place unless modified by this office or replaced by Headquarters' guidance.

## REVIEW PROCESS:

The review process should be comprehensive, but nonetheless, kept as simple as possible, preserve the District Director's discretion and provide for a timely decision on each final order custody case where removal is not possible or practicable. There are essential core elements a review process must encompass: Advance notice to the alien of the review and the factors to be considered; A review summary worksheet documenting factors considered; Written notice of the District Director's determination.

MEMORANDUM FOR: D▪ ▪O▪▪▪                                              Page 2
Subject: <u>Detention Procedures for Aliens Whose Immediate Repatriation Is Not Possible or Practicable</u>

All detention cases where removal is not possible or practicable must be reviewed prior to the end of the 90-day removal period and then once every six months after that if detention is continued. The review should begin at the journeyman-grade officer level and culminate with the District Director's determination. The review process must be the same within the entire district jurisdiction, regardless of the location and variety of detention facilities used to detain aliens. Districts encompassing sub-offices and multiple detention facilities must employ a uniform process and, to the extent possible, use the same forms and documentation for each custody determination.

While interviews of detained aliens are often warranted they are not necessary as an alien may submit written evidence in support of release. Any interview procedure should be kept simple, consisting of not more than two journeymen-grade officers.

All custody reviews should result in a well-documented, clear custody recommendation that will be forwarded through the Assistant District Director for Detention and Deportation to the District Director for review and decision. A review process that results in a mixed recommendation presented to the District Director or has more than two levels of review should be avoided.

Written notice will be given to each affected alien at least 15 business days prior to the date of review, contain the factors to be considered, and explain the right to provide evidence that release will not pose a danger to the community or a significant flight risk. Documentation of the review consideration will be placed in the alien's A-file and written notification of the decision will be served on the alien (or attorney of record) within 15 business days following the date of review. All notification will be provided to the alien and any legal representative either by personal service or Certified Mail/Return Receipt. The alien should be informed of the right to be represented by an attorney, or other authorized representative, at no cost to the government.

In December 1998, we sent a draft custody review proposal to each district for comment. Included in that draft was a custody worksheet that used a point system to facilitate custody/release determinations. We have now concluded that it is not advisable to use a point system to arrive at custody determinations. The attached Field Operations' guidance of February 3, 1999, and April 30, 1999, that mandates custody reviews sets forth the criteria for custody decisions. Custody reviews should be made by weighing favorable and adverse factors to determine whether the detainee has met the burden to *"demonstrate by clear and convincing evidence"* that he is not a threat to the community and is likely to comply with the removal order. Accordingly, any district incorporating a point system to determine custody status should remove it from their review procedure.

## DOCUMENTING THE DECISION:

Also attached are samples from Eastern Region districts that may be used to complete custody reviews. Attachment 3 is a basic notification to be served on each alien. Attachment 4 is a sample notice that may be used when you deem an interview is required and omitted when no interview is to be conducted. Keep in mind when counsel represents an alien, correspondence, notification and decisions must be addressed to and through the attorney of record.

MEMORANDUM FOR: ●s, ◌ICs                                                Page 3
Subject: Detention Procedures for Aliens Whose Immediate Repatriation Is Not Possible or Practicable

Attachment 5 provides a means to document custody determinations by clearly identifying the process used, the factors considered, and the result of your review. While you may choose to use a different format, it is essential that your custody review documentation identify these three elements. This attachment may be modified to cover subsequent reviews, highlighting areas where circumstances have changed substantially and omitting those that have had no appreciable change since the previous review.

Attachment 7 is a sample decision to continue detention following the initial review determination. Attachment 8 is a sample decision to continue detention for subsequent reviews, covering changed circumstances from a previous review. The sample decision to continue detention following the initial custody review is much more detailed, providing a well-documented basis for continued custody. The sample for subsequent reviews that result in continued detention primarily builds on the initial decision and need not review previous considerations. We believe that decisions crafted in this manner are in the best interest of the District and the Service in general.

## TIMEFRAMES:

Please ensure that any detained alien whose removal is not possible and is approaching the end of the 90-day removal period has the review completed as soon as possible. While some districts have a larger workload than others do, it is essential that all overdue custody reviews (past the 90-day removal period) be completed by July 30, 1999, starting with the oldest cases.

## REPORTING RESULTS:

On July 30, 1999, and on the last workday of each quarter (September, December, March, June) until further notice, please submit the attached custody review status report (Attachment 9). A single consolidated district status report is to be faxed to EORDDP at (802) 660-5148.

Attachments:
1. HQOPS Memo of April 30, 1999 (Supplemental Detention Procedures).
2. HQOPS Memo of February 3, 1999 (Detention Procedures for Aliens Whose Immediate Repatriation is Not Possible or Practicable).                                    —
3. Sample: **Notice to Alien**
4. Sample: **Notice of Interview**
5. Sample: **Detained Alien Custody Review Worksheet**
6. Sample: **Decision of Custody Review**
7. Sample: **Decision to Continue Detention** (1st Review)
8. Sample: **Decision to Continue Detention** ( Subsequent Reviews)
9. Custody Review Status Report

cc: Chief Patrol Agents

 

**U.S. Department of Justice**
Immigration and Naturalization Service

HQCOU 90/16.51

Office of the Executive Associate Commissioner          *425 I Street NW
Washington, DC 20536*

APR 30 1999

MEMORANDUM FOR REGIONAL DIRECTORS

FROM:      Michael A. Pearson
           Executive Associate Commissioner
           Office of Field Operations

SUBJECT:   Supplemental Detention Procedures

This memorandum provides supplemental instructions to the Field Operations memos of October 7, 1998 on INS Detention Use Policy, and the February 3, 1999 memo on Detention Procedures for Aliens whose Immediate Repatriation is not Possible or Practicable. The memorandum is provided to clarify that all aliens who have an administratively final order but whose immediate repatriation is not practicable or proper will receive periodic review of their custody status pursuant to the appropriate regulation or policy guidance.

(1) Mariel Cubans:  Review procedures under 8 C.F.R. § 212.12 continue to apply to the discretionary release of inadmissible Mariel Cubans subject to exclusion or removal proceedings.

(2) Other alien categories [non-Mariel Cubans and other nationals] that are subject to an administratively final order, including —
    (a) aliens convicted of an aggravated felony offense who are subject to the provisions of old INA § 236(e)(1) - (3); and
    (b) non-aggravated felon aliens with final orders of exclusion

shall receive periodic custody status reviews pursuant to the procedures outlined in the February 3rd memo pertaining to administratively final order removal cases.

MEMORANDUM FOR: DDs, OICs                                    **Page 2**
Subject: Detention Procedures for Aliens Whose Immediate Repatriation Is Not Possible or Practicable

All detention cases where removal is not possible or practicable must be reviewed prior to the end of the 90-day removal period and then once every six months after that if detention is continued. The review should begin at the journeyman-grade officer level and culminate with the District Director's determination. The review process must be the same within the entire district jurisdiction, regardless of the location and variety of detention facilities used to detain aliens. Districts encompassing sub-offices and multiple detention facilities must employ a uniform process and, to the extent possible, use the same forms and documentation for each custody determination.

While interviews of detained aliens are often warranted they are not necessary as an alien may submit written evidence in support of release. Any interview procedure should be kept simple, consisting of not more than two journeymen-grade officers.

All custody reviews should result in a well-documented, clear custody recommendation that will be forwarded through the Assistant District Director for Detention and Deportation to the District Director for review and decision. A review process that results in a mixed recommendation presented to the District Director or has more than two levels of review should be avoided.

Written notice will be given to each affected alien at least 15 business days prior to the date of review, contain the factors to be considered, and explain the right to provide evidence that release will not pose a danger to the community or a significant flight risk. Documentation of the review consideration will be placed in the alien's A-file and written notification of the decision will be served on the alien (or attorney of record) within 15 business days following the date of review. All notification will be provided to the alien and any legal representative either by personal service or Certified Mail/Return Receipt. The alien should be informed of the right to be represented by an attorney, or other authorized representative, at no cost to the government.

In December 1998, we sent a draft custody review proposal to each district for comment. Included in that draft was a custody worksheet that used a point system to facilitate custody/release determinations. We have now concluded that it is not advisable to use a point system to arrive at custody determinations. The attached Field Operations' guidance of February 3, 1999, and April 30, 1999, that mandates custody reviews sets forth the criteria for custody decisions. Custody reviews should be made by weighing favorable and adverse factors to determine whether the detainee has met the burden to *"demonstrate by clear and convincing evidence"* that he is not a threat to the community and is likely to comply with the removal order. Accordingly, any district incorporating a point system to determine custody status should remove it from their review procedure.

## DOCUMENTING THE DECISION:

Also attached are samples from Eastern Region districts that may be used to complete custody reviews. Attachment 3 is a basic notification to be served on each alien. Attachment 4 is a sample notice that may be used when you deem an interview is required and omitted when no interview is to be conducted. Keep in mind when counsel represents an alien, correspondence, notification and decisions must be addressed to and through the attorney of record.

MEMORANDUM FOR: DDs, OICs                                    Page 3
Subject: Detention Procedures for Aliens Whose Immediate Repatriation Is Not Possible or Practicable

Attachment 5 provides a means to document custody determinations by clearly identifying the process used, the factors considered, and the result of your review. While you may choose to use a different format, it is essential that your custody review documentation identify these three elements. This attachment may be modified to cover subsequent reviews, highlighting areas where circumstances have changed substantially and omitting those that have had no appreciable change since the previous review.

Attachment 7 is a sample decision to continue detention following the initial review determination. Attachment 8 is a sample decision to continue detention for subsequent reviews, covering changed circumstances from a previous review. The sample decision to continue detention following the initial custody review is much more detailed, providing a well-documented basis for continued custody. The sample for subsequent reviews that result in continued detention primarily builds on the initial decision and need not review previous considerations. We believe that decisions crafted in this manner are in the best interest of the District and the Service in general.

## TIMEFRAMES:

Please ensure that any detained alien whose removal is not possible and is approaching the end of the 90-day removal period has the review completed as soon as possible. While some districts have a larger workload than others do, it is essential that all overdue custody reviews (past the 90-day removal period) be completed by July 30, 1999, starting with the oldest cases.

## REPORTING RESULTS:

On July 30, 1999, and on the last workday of each quarter (September, December, March, June) until further notice, please submit the attached custody review status report (Attachment 9). A single consolidated district status report is to be faxed to EORDDP at (802) 660-5148.

Attachments:
1. HQOPS Memo of April 30, 1999 (Supplemental Detention Procedures).
2. HQOPS Memo of February 3, 1999 (Detention Procedures for Aliens Whose Immediate Repatriation is Not Possible or Practicable).
3. Sample: Notice to Alien
4. Sample: Notice of Interview
5. Sample: Detained Alien Custody Review Worksheet
6. Sample: Decision of Custody Review
7. Sample: Decision to Continue Detention (1st Review)
8. Sample: Decision to Continue Detention (Subsequent Reviews)
9. Custody Review Status Report

cc: Chief Patrol Agents

Appendix I

*INT. PRO No 6*

U.S. Department of Justice
Immigration and Naturalization Service

HQOPS 50/14.6-C

Office of the Executive Associate Commissioner

425 I Street NW
Washington, DC 20536

AUG 6 1999

MEMORANDUM FOR ALL REGIONAL DIRECTORS
                               DISTRICT DIRECTORS
                               OFFICERS IN CHARGE

FROM:    *Kenneth [signature]*
             Michael A. Pearson
             Executive Associate Commissioner
             Office of Field Operations

SUBJECT:    Interim Changes and Instructions for Conduct of Post-order Custody Reviews

This memorandum addresses several changes to current procedures regarding post-order detention procedures for aliens whose immediate repatriation is not possible or practicable.[1] Current regulations, 8 C.F.R. § 241.4, provide that the decision whether to detain or release such an alien is made by the District Director. In the near future, the Service will begin the rulemaking process to propose a program modeled after the Cuban Review Plan of 8 CFR section 212.12 to address post-order custody cases. The custody of Mariel Cubans will continue to be governed by 8 CFR 212.12. Until this more permanent program is implemented, several changes are being made to the current procedures set forth in the memoranda of February 3, and April 30, 1999. These changes are effective immediately. All offices will follow identical procedures in conducting reviews of post-order custody cases, using the forms listed at the conclusion of this memorandum. The forms will be distributed to all offices.

The Attorney General and the Commissioner have agreed that these procedures, as detailed below under the heading "Interim Procedures," will include written notice to the alien of custody reviews. The notice will advise the alien that he may present information supporting a release, and he may be assisted by an attorney or other person at no expense to the government. The alien will receive an in-person interview at the first custody review following expiration of the removal period. Thereafter, the alien will receive a separate notice of the opportunity for an annual interview. The alien will be provided written reasons for INS custody decisions.

---

[1] See the memoranda from Michael Pearson, Executive Associate Commissioner for Field Operations, February 3, 1999: Detention Procedures for Aliens Whose Immediate Repatriation is Not Possible or Practicable, and April 30, 1999: Supplemental Detention Procedures.

Appendix I, continued

MEMORANDUM FOR ALL REGIONAL DIRECTORS             **Page 2**
               DISTRICT DIRECTORS
               OFFICERS IN CHARGE
SUBJECT:     Interim Changes and Instructions for Conduct of Post-order Custody Reviews

The District Director will continue to make custody determinations within the ninety-day removal period under the memoranda of February 3, and April 30, 1999. The next scheduled review shall be nine months from the date of the final administrative order of removal or six months after the last review, whichever is later. That review will include an interview and is subject to review at INS Headquarters if the District Director has determined that the alien should remain in custody. Thereafter, reviews will be conducted at six-month intervals, alternating between a file review by the District Director (without an interview unless the District Director, in his discretion, determines that one would be useful, and without Headquarters review), and a review with the opportunity for an interview at the alien's request and with Headquarters review.

No case subject to a Headquarters review will be considered a final custody decision until the District level decision has been ratified through the Headquarters review or resolved after referral back to the District. If the Headquarters reviewer concludes that the District Director should reconsider his decision or that further documentation is required to support the District Director's decision, the case shall be forwarded to the Regional Office with a cover memorandum and instructions to refer the case back to the District for further consideration or documentation. The Headquarters reviewer shall detail the issues that resulted in the referral and forward the case to the Regional Office.

Regional Directors are responsible for working with the District Director to comply with the Headquarters instructions on referrals. In addition, the Regional Director is responsible for preparation of statistics on the custody reviews conducted in each district.

## INTERIM PROCEDURES

(1) Pursuant to the provisions of 8 C.F.R. § 241.4, the District Director will continue to conduct a custody review of administratively final order removal cases before the ninety-day removal period mandated by § 241(a)(1) expires for aliens whose departure cannot be effected within the removal period.

(2) These procedures apply to any alien ordered removed who is inadmissible under § 212, removable under 237(a)(1)(C), 237(a)(2), or 237(a)(4) or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal. They cover aliens convicted of an aggravated felony offense who are subject to the provisions of old INA § 236(e)(1) — (3), and non-aggravated felon aliens with final orders of exclusion. Mariel Cubans are excluded from these procedures as parole reviews for them are governed by 8 C.F. R. § 212.12. The ninety-day review will be conducted pursuant to the instructions set out in the memoranda of February 3 and April 30, 1999. District Directors may, in their discretion, interview the alien if they believe that an interview would facilitate the custody review.

Case 1:00-cv-00131-YK    Document 1    Filed 01/21/2000    Page 21 of 22

Appendix I, continued

MEMORANDUM FOR ALL REGIONAL DIRECTORS                   **Page 3**
                         DISTRICT DIRECTORS
                         OFFICERS IN CHARGE
SUBJECT:    Interim Changes and Instructions for Conduct of Post-order Custody Reviews

(3) Following expiration of the ninety-day removal period, the next scheduled review provided by the District Director shall be nine months from the date of the final administrative order of removal or six months after the last review, whichever is later. Written notice shall be given to each alien at least 30 days prior to the date of the review. The notice will be provided either by personal service or certified mail/return receipt. The notice shall specify the factors to be considered and explain that the alien will be provided the opportunity to demonstrate by clear and convincing evidence that he is not a threat to the community and is likely to comply with the removal order.

(4) For the review discussed in paragraph 3 above, an interview is mandatory and the District Director's preliminary decision will be subject to Headquarters review. Thereafter, custody reviews will be conducted every six months, alternating between District Director file reviews and a review that includes the opportunity for an interview at the alien's request and a Headquarters review of detention decisions. A separate notice will advise the alien of the opportunity for the interview. The alien may check the appropriate box on the notice, returning the form provided within 14 calendar days so that an interview may be scheduled. The District Director has the discretion to schedule further interviews if he determines they would assist him in reaching a custody determination.

(5) The alien must be advised that he may submit any information relevant to support his request for release from detention, either in writing, electronically, by U.S. mail (or any combination thereof), or in person if an interview is conducted. The alien must also be advised that he may be represented by an attorney, or other person at no expense to the government. If an interview has been scheduled, the alien's representative may attend the review at the scheduled time.

(6) The District Director may delegate custody decisions to the level of the Assistant District Director, Deputy Assistant District Director, or those acting in their capacity. Custody determinations will be made by weighing favorable and adverse factors to determine whether the detainee has demonstrated by clear and convincing evidence that he does not pose a threat to the community, and is likely to comply with the removal order. See 8 C.F.R. § 241.4. The alien's past failure to cooperate in obtaining a travel document shall be considered an adverse factor in determining eligibility for release. See INA § 241(a)(1)(C) Suspension of Period. The fact that the alien has a criminal history does not create a presumption in favor of continued detention.

NOTE

(7) Within thirty days of the District Director's custody review, the alien must receive written notification of a custody decision. All notification will be provided either by personal service or certified mail/return receipt. A decision to release should specify the conditions of release. A decision to detain will clearly delineate the factors presented by the alien in support of his release, and the reasons for the District Director's decision.

Appendix I, continued

**MEMORANDUM FOR ALL REGIONAL DIRECTORS**                    **Page 4**
**DISTRICT DIRECTORS**
**OFFICERS IN CHARGE**
SUBJECT:     Interim Changes and Instructions for Conduct of Post-order Custody Reviews

(8)  With respect to those detain decisions that are subject to Headquarters review under
paragraph 4, the District Director's determination that the alien should be detained is
to be regarded as only preliminary. In those instances, the Regional Directors will
forward the preliminary detain decisions to Headquarters for review. Headquarters
review will be conducted by Operations and Programs representatives (with
assistance from the Office of General Counsel as necessary). Where the
Headquarters reviewer's decision concurs with the District Director's, the
Headquarters reviewer will write a supporting statement and will seek concurrence
from a second Headquarters reviewer. Where the two reviewers differ, a panel of
three Headquarters reviewers will conduct a further review of the case. The
Headquarters panel may ratify the District Director's decision, return the case to the
District Director to reconsider his decision, or determine that additional information
is required to make a decision. The Headquarters review must be completed within
thirty days of file receipt. The Headquarters review conclusions will be forwarded to
the Regional Director for distribution to and appropriate action by the District
Director.

(9)  The District Director will review his decision in light of the Headquarters
recommendations and will notify the alien of the final custody determination within
thirty days of completion of the Headquarters review.

(10)  The District Director should make every effort to effect the alien's removal both
before and after expiration of the removal period. All steps to secure travel
documents must be fully documented in the alien's file. However, if the District
Director is unable to secure travel documents locally after making diligent efforts to
do so, then the case shall be referred to Headquarters OPS/DDP for assistance. More
detailed instructions will be issued from the Executive Associate Commissioner for
Operations by separate memorandum.

(11)  On August 30, 1999, and on the last workday of each quarter (September,
December, March, June) each district shall submit a custody review status report to
its Regional office and to Headquarters. There will be more detailed instructions
issued on reporting procedures at a later time.